**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Joe Lesly TURNER, Appellee.**

**No. 6375.**

Court of Appeals of Texas, Waco.

May 27, 1982.

Jerry P. Campbell, Beverly Willis, Naman, Howell, Smith & Lee, P. C., Waco, for appellant.

Guy D. Cox, Waco, for appellee.

HALL, Justice.

This is a worker's compensation case. Plaintiff Joe Lesly Turner pleaded for total and permanent disability benefits based upon an alleged occupational disease. After a jury trial, judgment was rendered on the verdict for plaintiff for total general incapacity for seventy-one weeks. Defendant Texas Employers Insurance Association brought this appeal. We affirm the judgment.

Plaintiff was an employee of Johnnie Necker Concrete. His testimony establishes that on January 10, 1980, while he was pouring concrete slabs some cement spilled into his boots. He said that he immediately, within two or three minutes, removed the boots and washed out the cement, and that in the process of doing this some of the cement got on his hands. However, according to Dr. Walker Lea, plaintiff's treating physician, plaintiff reported to Dr. Lea that he continued to work for several hours prior to removing the concrete from his boots and that the material denuded the skin on his feet.

By January 17, 1980, blisters and sores had developed on plaintiff's feet to the extent that he was forced to quit work and seek medical attention. He has not worked since. Sores also developed on plaintiff's hands.

After treatment by other physicians, plaintiff was referred to Dr. Lea, who specializes in dermatology, on February 22, 1980. Dr. Lea has treated plaintiff since that date. Dr. Lea determined that plaintiff had developed an allergy to chromate salts, a substance found in cement, and that this sensitivity in connection with the contact with the cement on January 10th had produced the blisters and sores on plaintiff's feet and hands. The medical diagnosis was "contact dermatitis." The dermatitis on plaintiff's hands had cleared by early March, 1980; and his feet were clearing by the time of trial.

The case was tried to a jury in April, 1981. Findings were made that plaintiff "has or had an occupational disease" which arose out of the course of his employment and was a producing cause of total/temporary incapacity which began on January 17, 1980 for the duration of seventy-one weeks. The jury also found that plaintiff had worked for at least 210 days during the

year immediately preceding January 17, 1980; that his average daily wage was $44.00; and that his medical expenses were $662.00. Judgment was rendered for plaintiff on the verdict for compensation benefits totaling $8,449.00, plus his medical expenses.

Defendant's principal contentions are that the evidence is legally and factually insufficient to support the jury's finding of occupational disease; that there is no evidence of general incapacity; and that the evidence shows as a matter of law that any injury or occupational disease and incapacity were confined to specific members, plaintiff's feet and hands.

Defendant's expert medical witness was Dr. Maurice Barnes, a physician whose specialty is dermatology. He had examined plaintiff on March 11, 1981, for defendant. He concurred with Dr. Lea's diagnosis of "contact dermatitis," and he agreed that plaintiff is allergic to chromate. He acknowledged on cross-examination that the cement industry is one of several in which occupational contact with chromates is common, and his testimony established that "in industry other workers who may have handled certain substances in their occupation for decades without difficulty can suddenly become sensitized and develop a severe working contact dermatitis. Such occurrences are particularly true for cement workers, painters, tile setters." He said that contact dermatitis is "an ordinary disease of life to which the public generally is exposed," but that "cement dermatitis is not the especially common type contact dermatitis that we see."

There is evidence that plaintiff's principal occupation for about eight years prior to January 1980 was working in cement. Dr. Lea said, "He [plaintiff] had been working in cement and it was after his traumatic exposure that he developed the eruption, so we patch-tested him to potassium dichromate and he had a positive patch test.... This would indicate that he is especially allergic to chromates.... Persons who become allergic to chromate develop a dermatitis, irritation of the skin, that varies from a very mild dermatitis to a very severe dermatitis. It can be very caustic, producing ulcerations. It is a characteristic dermatitis that is slow to heal and is recurrent when the patient is reexposed to that material. Once an individual becomes sensitized he'll maintain that sensitivity [permanently]. The sensitivity is an allergic reaction caused by the individual's immunological makeup that will permit him to become sensitized to the material. If his immunological status is such that he reacts to the antigen, which is the material, the chromate, then he develops antibodies to that material and he'll have a reaction. That reaction can be in the skin, in the mucous membrane, wherever. That's how the allergy develops. Some people have the capacity to develop this type of reaction and some people do not.... Once the sensitivity develops, subsequent exposures to these materials could bring on a more severe type reaction.... It is plaintiff's skin [that is allergic to the chromate]. It could be his hands, feet, body area.... wherever the chromate material contacts the skin .... This sensitivity has affected all the skin of his whole body.... He cannot work in an area where he'll be exposed to chromates or chromium salt because he's likely to break out again all over if he gets exposed to it.... [I] would classify [his] contact dermatitis as an occupational disease."

There is other evidence we need not detail on the issues in question. Following the familiar rules set forth in *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980), for testing defendant's complaints, we hold the evidence is legally and factually sufficient to support the jury's finding of occupational disease; that there is evidence of general incapacity; and that the evidence does not conclusively establish an injury or incapacity confined solely to plaintiff's hands and feet.

Defendant's other points and contentions are also without merit, and they are overruled.